Isaac William Hess
57900 S 600 Rd
Kansas, OK 74347
(720) 397-1004
isaacwh@hotmail.com

Case: 1:22-cv-03385
Assigned To : Nichols, Carl J.
Assign. Date : 11/4/2022
Description: Pro Se Gen Civ. (F-Deck)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ISAAC WILLIAM HESS,<br><br>    Plaintiff,<br><br>    vs.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR,<br>1849 C Street, N.W.<br>Washington, D.C. 20240, and<br><br>DEB HAALAND, in her official capacity as the Secretary of the U.S. Department of the Interior,<br>1849 C Street, N.W.<br>Washington, D.C. 20240,<br><br>THE CHEROKEE NATION,<br>and CHUCK HOSKIN, Jr.,<br>Principal Chief of the Cherokee Nation<br>W.W. Keeler Tribal Complex 17675 S. Muskogee Ave. Tahlequah, OK 74464<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

COMPLAINT FOR DECLARATORY JUDGMENT - 1

Plaintiff, Isaac Hess, representing himself pro se, hereby files this Complaint for Declaratory Judgment, and alleges as follows:

## INTRODUCTION / PRELIMINARY STATEMENT

1. This action is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201. As required by that Act, an actual case or controversy exists between Isaac Hess and Lisa Hess regarding the issue of the Cherokee Nation District Court having jurisdiction over the custody and visitation of their minor children in Case No. CVPAT-22-85.

2. Plaintiff brings this complaint to obtain a declaratory judgment that the Treaty of 1866 provides that the Cherokee Nation has jurisdiction over all tribal members for all civil matters not limited by Congress regardless of where they live, and declaring that the Cherokee Nation District Court has jurisdiction over the custody and visitation issues in Case No. CVPAT-22-85.

## I. JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

4. Subject matter jurisdiction is also based upon 28 U.S.C. § 1362.

5. This Court has jurisdiction to grant a declaratory judgment pursuant to 28 U.S.C. § 2201, and to grant injunctive relief pursuant to 28 U.S.C. § 2202.

6. Venue is proper in this judicial district (District of Columbia) pursuant to 28 U.S.C. § 1391(e).

7. This Court has personal jurisdiction over the federal agency defendants.

8. Sovereign immunity does not apply for Tribal officers when declaratory relief is being sought. In *Vann v. Kempthorne*, 534 F.3d 741 (D.C. Cir. 2008), the court clearly stated "we hold that the suit may proceed against the tribe's officers but not against the tribe itself." This was because declaratory relief was being sought and not relief from damages.

## II.   PARTIES

9. Plaintiff, is a member and citizen of the Cherokee Nation.

10. Defendant, United States Department of Interior, is a department of the United States government.

11. Defendant, Deb Haaland, is sued solely in her official capacity as the Secretary of the Interior.

12. Defendant, the Cherokee Nation, is a governmental entity headquartered in Tahlequah, Oklahoma.

13. Defendant Charles "Chuck" Hoskin, Jr., in his official capacity as Principal Chief of the Cherokee Nation.

14. All of the Defendants are responsible for the adherence and administration of the Treaty between the United States and the Cherokee Nation, July 19, 1866, 14 Stat. 799 (the "Treaty of 1866" or "1866 Treaty"), and subsequent acts of Congress applicable to the Treaty of 1866.

COMPLAINT FOR DECLARATORY JUDGMENT - 3

## III.   GENERAL ALLEGATIONS / STATEMENT OF FACTS
### The Treaty of 1866

15.   The Cherokee Nation is a sovereign Indian nation recognized by the United States of America.

16.   For thousands of years, long before the signing of the Treaty of 1866, the Cherokee Nation has continuously exercised the rights of self-governance.

17.   Central to this right of self-governance is a common principal shared by the Plaintiff, the Cherokee Nation, and all citizens of the United States of America. This common principal is expounded upon in the Declaration of Independence:

> We hold these truths to be self-evident, that all men are created equal, that they are endowed by their creator with certain unalienable Rights, that among these are Life, liberty, and the pursuit of Happiness …

Declaration of Independence, ¶ 2 (U.S. 1776).

18.   On October 7, 1861, Chief Ross of the Cherokee Nation signed a treaty with the Confederate States of America, which aligned the Cherokee Nation with the Confederacy in the Civil War. On July 19, 1866, after the conclusion of the Civil War, the Cherokee Nation entered into a peace, amnesty, and reconstruction treaty with the United States, 14 Stat. 799 (the "Treaty of 1866").

19.   The treaties between the United States and the Cherokee dictate that only acts of Congress signed by a United States President and which explicitly include Indian Country, can limit the sovereignty of the Cherokee. In *Cherokee Nation v. Georgia*, 30 U.S. 1 (1831), it was established that the Cherokee are a domestic dependent nation, which means that they have sovereignty over most matters, with only

certain limits being placed on them by Congress. *Worchester v. Georgia* 31 U.S. 515 (1832), established that the Cherokee possess sovereignty and therefore no state law applies to the Cherokee, unless limited by Congress.

20. Article 13 of the Treaty of 1866, states:

> The Cherokees also agree that a court or courts may be established by the United States in said Territory, with such jurisdiction and organized in such manner as may be prescribed by law: Provided, That the judicial tribunals of the nation shall be allowed to retain exclusive jurisdiction in **all civil** and criminal cases arising within their country in which members of the nation, by nativity or adoption, shall be the only parties, or where the cause of action shall arise in the Cherokee Nation, except as otherwise provided in this treaty." *Emphasis added.*

21. The Cherokee Nation court has exclusive jurisdiction in all matters relating to civil cases which involve their members. The criminal jurisdiction has since been modified by Congress, and was directly tied to only exist when tribal members are within the treatise lands of the nation. Additionally, the Indian Child Welfare Act of 1978 ("ICWA") limited certain cases of civil jurisdiction to land-based territory, specifically the child custody of abused and neglected children, and adoptions. Since the Cherokee Nation country is citizenship-based, and not land-based, and the civil jurisdiction has never been limited or modified by Congress since the Treaty of 1866, the civil jurisdiction of the Cherokee Nation court still exists wherever a Cherokee citizen resides. The acts of Congress to limit jurisdiction were specifically made to limit jurisdiction in particular cases so that they became territorial-based, instead of citizenship-based. These limits were not all encompassing and only affected criminal jurisdiction and ICWA cases.

22. In 2017, it was established by the U.S. District Court in *Cherokee Nation v. Nash*, 267 F. Supp. 3d 86 (D.D.C. 2017), that the Treaty of 1866 is still intact and expected to be followed. A few short years later, in 2020, the Supreme Court in *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2459 (2020), again established that the treaties between the United States and the Indian tribes are still in force. The Supreme Court never stated in the 86-page decision that the treaties are only intact for criminal cases, rather they repeatedly referred to the case of *Muscogee (Creek) Nation v. Hodel*, 851 F. 2d 1439, at 1442, 1446–1447, and the OIWA (Oklahoma Indian Welfare Act) to demonstrate the right of the Indian Nations to establish sovereign governments, including tribal courts of both general criminal and civil jurisdiction.

23. The United States and Cherokee are both citizen-based nations for jurisdictional purposes. The United States is clearly a citizenship-based country for jurisdictional purposes, because the United States taxes all of its citizens regardless of where they reside in the world. All of the States also tax their citizens no matter where they are located making money within the United States. The same is true of voting and the right to be able to vote even if not physically located in the country. The United States and the individual States also have civil jurisdiction over their citizens wherever they are currently located, which is why a person can only have personal jurisdiction where they are a citizen and not in another court. The same is also true of the Cherokee Nation and its citizens.

24. *Oklahoma v. Castro-Huerta*, 597 U.S. ___ (2022), decided June 29, 2022, established that jurisdiction is based upon citizenship instead of location. If jurisdiction

was only due to location, then only the tribes and U.S. Government would have had exclusive jurisdiction over non-tribal citizens in their treatise lands. The United States Supreme Court clearly established that jurisdiction is not location-based, but rather is citizenship-based, when they ruled that the State of Oklahoma has concurrent jurisdiction with the tribe and the Federal Government in treatise lands when the case involves a non-citizen of the tribe who commits a crime.

25. The OIWA provides that any tribal constitution established by the tribes has to be approved by the Department of the Interior prior to coming into effect. In the Cherokee Nation Constitution that was written in 1999, approved by the Nation in 2003, and approved by the Secretary of the Interior on March 12, 2021, tribal courts were established in Article VIII. Prior to this most recent Constitution, previous Constitutions also established tribal courts, but since this is the most recent Constitution and is applicable in this case, it is the one that will be considered. In Article VIII section 6, the District Courts of the Cherokee Nation were established as "courts of general jurisdiction and shall be vested with original jurisdiction, not otherwise reserved to the Supreme Court, to hear and resolve disputes arising under the laws or Constitution of the Cherokee Nation in both law and equity, whether criminal or civil in nature." There were no restrictions placed on the Cherokee Nation courts in the approved Constitution to limit their jurisdiction to land or territory-based jurisdiction, unless otherwise limited expressly by Congress. The jurisdiction extended to all Cherokee citizens no matter where they live.

26.     In 1868, Congress passed the 14th Amendment to the United States Constitution, which provides:

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The 14th Amendment did not automatically apply to Cherokee citizens because they were not made U.S. citizens with its passage. If a Cherokee citizen moved to another part of the United States, they did not become U.S. citizens simply because they moved off of the treatise lands. It took an act of Congress for them to become U.S. citizens: the Indian Citizenship Act of 1924. This clearly demonstrates that the Cherokee are citizenship-based jurisdiction, rather than location-based jurisdiction.

27.     Until the Indian Citizenship Act of 1924, Native Americans were not considered to be U.S. citizens. This means that regardless of where they lived, the Cherokee Nation still held jurisdiction over its citizens because their jurisdiction is citizenship-based. But because they are now U.S. citizens, the jurisdiction of the Cherokee Nation over its people did not change, as the treaty clearly indicates. The Cherokee Nation was still responsible for prosecuting members of its Nation that committed criminal acts outside of its treatise lands, until Congress limited this and allowed states and the federal government to prosecute them when outside of treatise lands. This means that the United States did not view themselves as having jurisdiction to infringe on the sovereignty of the tribes. Congress did not limit the criminal

jurisdiction of the Tribe until 1948, which was 24 years after the Indian Citizenship Act of 1924 caused the Cherokee to become U.S. citizens. No part of the civil jurisdiction for child custody determinations was modified by Congress until the ICWA was passed in 1978, and has not been modified outside of that Act since. This act limited only particular cases: child abuse, child neglect, and adoption.

28. The States had been having issues with determining who should have jurisdiction over a child, because a child cannot declare themselves a citizen of a particular state. Therefore, any child that was not already a citizen of an Indian tribe did not have an official citizenship in a particular State. The question arose: If parents live in different states, and children reside with both parents, where should jurisdiction lie? A child cannot decide for themselves where their citizenship is. In the case of Indian tribal children, they are already citizens of a tribe and there was no need to declare their citizenship as being with a state. In 1994, Congress passed 28 U.S. Code § 1738A, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") in order to declare the citizenship of any child who did not already have a citizenship previously declared by an Indian tribe. 28 U.S. Code § 1738A defines the citizenship of a child that is not already a citizen of an Indian tribe as:

> "Home State" means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period."

In the instant case, the child at issue is, and was already, a member "citizen" of the Cherokee Nation. The definition of "Home State" does not apply. The Cherokee Nation courts have jurisdiction, not any state court.

29. Congress passed 28 U.S. Code § 1738A (UCCJEA) in 1994, but did not include the Cherokee in limiting their child custody determination jurisdiction from being citizenship-based jurisdiction. With the most recent modification to 28 U.S. Code § 1738A that went into effect in 2010, Congress defined "State" under the UCCJEA: "'State' means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or a territory or possession of the United States." In *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2459 (2020), the United States Supreme Court clearly stated that "[O]nly Congress can alter the terms of an Indian treaty …, and its intent to do so must be clear and plain." Clearly Congress did not intend to redefine the citizenship of Indian tribal children. Congress did, however, see fit to declare the citizenship of non-tribal children for the States to determine jurisdiction.

30. In 1994, Congress also passed 28 U.S. Code § 1738B, the Full Faith and Credit for Child Support Orders Act ("FFCCSOA"), which limited the Cherokee jurisdiction over child support decisions to being location-based jurisdiction because they defined a "State" for reference to what a "home State" was as: "The term "State" means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the territories and possessions of the United States, and Indian country (as defined in section 1151 of title 18)." Clearly, this includes the Cherokee Nation in limiting child support jurisdiction to location-based jurisdiction. This decision to limit

the child support jurisdiction to where a child is living is not actually about the child, but about the parents, because the parents have the financial responsibility to support the child. It made more sense to determine child support jurisdiction based upon where a child lives, because the cost of living is different in different places.

31. It is clear based upon the similarity of the definitions in these two codes (28 U.S. Code § 1738A and 28 U.S. Code § 1738B) and the close proximity in time that they were passed, that Congress intended to leave the child custody determination jurisdiction in the hands of the tribes because Indian tribal children are already citizens and under the jurisdiction of their tribe. Congress did not force state citizenship upon Indian tribal children.

32. The Supreme Court also reemphasized in *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766, 105 S. Ct. 2399, 2403, 85 L. Ed. 2d 753 (1985), that "standard principles of statutory construction do not have their usual force in cases involving Indian law." Instead, "statutes are to be construed liberally in favor of Indians, with ambiguous provisions interpreted to their benefit." This means that because 28 U.S. Code § 1738A did not explicitly include the tribes, it must be liberally construed as not including the tribes, as that is the interpretation to their benefit because it allows them to retain jurisdiction over all of their child citizens.

33. Child custody is strictly a civil matter that involves the child in question. All of the federal codes that relate to the welfare of children (ICWA, UCCJEA, etc.), refer to the child as being the "party" for jurisdiction determination. The only party in a child custody determination action is the child, not the parents or other guardians,

1  which is why a court has the ability to assign child custody to a parent, grandparent, or
2  other guardian.  In cases of abused children, neglected children, and adoptions, the
3  ICWA, which was passed by Congress, limited the civil jurisdiction of those cases to be
4  land-based, territorial jurisdiction.  The ICWA and the other codes passed by Congress
5  have not limited any other child custody jurisdiction that the Cherokee Nation court has
6  under the Treaty of 1866.

7      34.   In *McGirt*, 140 S. Ct. 2452 (2020), the Supreme Court expressed that to
8  allow practices that have existed outside of statute …

> … would only serve to allow States and courts to finish work Congress has left undone, usurp the legislative function in the process, and treat Native American claims of statutory right as less valuable than others.  None of that can be reconciled with our normal interpretive rules, let alone our rule that disestablishment may not be lightly inferred and treaty rights are to be construed in favor, not against, tribal rights. *Solem*, 465 U. S., at 472.9."

The state is not allowed to ignore the law as written in favor of practicality.  The Court brought attention to the fact that there are "perils of substituting stories for statutes," which means that a history of practices does not justify them under the law and should not be continued because "[t]hat would be the rule of the strong, not the rule of law."  Even though states have been making child custody decisions using the UCCJEA to justify their actions, this practice cannot be allowed to continue because it is not what the law provides for.

    35.   Exclusive jurisdiction is different from concurrent jurisdiction in that exclusive jurisdiction means only that court can hear the matter whereas concurrent jurisdiction means either court can hear the matter and it is then discretionary as to

which court hears the matter. Pursuant to 28 U.S. Code § 1331, the federal court has exclusive jurisdiction to decide matters of federal law and treaties. Jurisdiction in this case is governed by the Treaty of 1866, which gives exclusive jurisdiction to the tribal court for all cases criminal and civil involving its members. Exclusive jurisdiction in this matter resides with one court, and one court only: Cherokee Nation District Court, which means it cannot be discretionary as to which court hears the matter.

36.     The Treaty of 1866 grants exclusive jurisdiction to the Cherokee court over all civil matters, and therefore the Cherokee court is obligated to take it and cannot refuse to take it because the Cherokee Constitution dictates that the Cherokee District Court is a court of general jurisdiction, and it is the only court with jurisdiction to decide the matter. The only way the Cherokee court would not have jurisdiction over civil matters would be if an act of Congress had caused them to no longer have jurisdiction.

37.     Federal laws do not allow federal courts to hear cases regarding custody of children, and States are not granted authority to usurp federal treaties. Therefore, the only court able to hear cases involving child custody determinations of Cherokee children, and which is obligated to do so, is the Cherokee Nation District Court. Because the Cherokee District Court is a court of General Jurisdiction, it is obligated to hear every case which properly comes before it. The Cherokee District Court would only have discretion whether to hear a case if there is concurrent jurisdiction, which does not apply.

38. Jurisdiction is a universal principle, jurisdiction is fundamental, jurisdiction must exist for a court to proceed, and a court cannot establish its own jurisdiction. "A court has no jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and a court must have the authority to decide that question in the first instance." See *Rescue Army v. Municipal Court of Los Angeles*, 171 P2d 8; 331 U.S. 549, 91 L. ed. 1666, 67 S.Ct. 1409.

39. Because the determination of jurisdiction for the custody of a Cherokee child is a matter of treaty, neither a State court, nor the Cherokee District Court, has the discretion to decide whether the Cherokee Nation has jurisdiction. Because the issue involves a matter of treaty, only a Federal court is allowed to make this decision, and this act of Congress (28 U.S.C. § 1331) is explicit on which court has jurisdiction over matters involving treaty and Federal Law.

### IV. FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

40. <u>Reallegation</u>. Plaintiff hereby realleges, reasserts, and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

41. <u>Declaratory Judgment</u>.

41.1. Title 28 U.S.C. § 2201, which allows the issuance of declaratory judgments in cases within the courts' jurisdiction, is procedural and restricted to "cases" and "controversies" in the constitutional sense. See *Longshoremen's Union v. Boyd*, 347 U.S. 222 (1954); *Miller v. Udall*, 368 F.2d 548 (10th Cir. 1966). It is not available for the resolution of hypothetical, academic, or theoretical problems. See *Wirtz v. Fowler*, 372 F.2d 315 (5th Cir. 1966). The federal courts do not render advisory

1 opinions. *Golden v. Zwickler*, 394 U.S. 103 (1969). However, assuming a requisite case or controversy is present, the Declaratory Judgment Act may be used to obtain a declaration of rights or other legal relationships. See, e.g., *Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 201, 204 (1967); *State of Wyoming v. United States*, 310 F.2d 566 (10th Cir. 1962), cert. denied, 372 U.S. 953 (1963); *Universal Fiberglass Corp. v. United States*, 400 F.2d 926 (8th Cir. 1968).

41.2. In cases of actual controversy and within the jurisdiction of the court, any court of the United States may declare rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. 28 U.S.C. $ 2201. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. *Id.*

41.3. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. Fed. R. Civ. P. 57.

41.4. There is a real and justiciable dispute between the parties with respect to whether the Cherokee Nation District Court has jurisdiction or can waive its jurisdiction regarding a matter regarding the custody and visitation of a minor child who is a member of the Cherokee Nation.

41.5. The Cherokee Nation District Court contends either it does not have jurisdiction or it is permitted to waive its jurisdiction so that another court, the District Court in the State of Idaho, may assume jurisdiction.

41.6. This is a definite and concrete dispute, which involves the parties' legal rights and adverse interests, such that the court may make a definite and immediate determination.

41.7. Accordingly, Plaintiff is entitled to a resolution of this case and controversy in its favor through a declaratory judgment of this Court finding, concluding, and declaring that the Cherokee Nation District Court has jurisdiction over all tribal members for all civil matters not limited by Congress regardless of where they live, including CVPAT-22-85.

## V. PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests that the Court enter its declaratory judgment granting relief as described herein; along with all other relief to which he is entitled.

DATED: 1 November 2022

By: _____Isaac W. Hess_____
Isaac William Hess
57900 S 600 Rd
Kansas, OK 74347
(720) 397-1004
Email: isaacwh@hotmail.com